UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>TERRY L. REED ) | CAUSE NUMBER 3:06-cr-75-RLM |

ORDER AND OPINION ON COMPASSIONATE RELEASE

Terry Reed has moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). He was sentenced in 2007 to 262 months for one count of illegal possession of a firearm by a felon and one count of illegal possession of a firearm by a user of controlled substances. He is housed at the United States penitentiary at Victorville. The government agrees that Mr. Reed has exhausted his administrative remedies within the prison, as he must to seek compassionate release from a district court. *See* United States v. Sanford, 986 F.3d 799 (7th Cir. 2021). By the court's count, Mr. Reed has served fourteen years and nine months without regard to good time. His crime of conviction required a sentence of at least fifteen years. 18 U.S.C. § 924(e). Mr. Reed is scheduled to be released in February 2027.

The government opposes Mr. Reed's motion and contends that the commentary to U.S.S.G. § 1B1.13 sets forth the standard a district court must apply when faced with a motion for compassionate release. Our court of appeals disagrees. Until the Sentencing Commission updates the pertinent application notes to include prisoner-initiated applications, district judges must apply the statutory criteria of "extraordinary and compelling reasons," United States v.

Gunn, 980 F.3d 1178 (7th Cir. 2020), and consider the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

Mr. Reed argues that his sentence is unreasonable. Courts are divided about whether the reasonableness of a sentence can amount to an extraordinary and compelling reason for compassionate release, but Mr. Reed hasn't persuaded the court that his sentence is unreasonable. It appears that the sentencing guidelines would recommend the same sentencing range of 210 to 262 months if he committed his crime today: he would still be deemed an armed career criminal based on his previous convictions for armed robbery in South Carolina, armed robbery and robbery in Georgia, and robbery in Indiana. The only difference today would be that the sentencing guidelines are advisory rather than mandatory.

Mr. Reed also raises arguments more commonly seen in a motion under 28 U.S.C. § 2255: that he might not have known that his previous convictions made it unlawful for him to possess firearms and that his guideline enhancement for being an armed career criminal had to be proven to a jury beyond a reasonable doubt. Neither point would entitle him to relief under § 2255, and in any event, neither presents an extraordinary or compelling reason for a sentence reduction.

The Bureau of Prisons has done its best to keep inmates and staff safe from the coronavirus despite the inability of any prison to impose social distancing or alcohol-based hand sanitizer recommendations. The Bureau of Prisons' efforts have been more successful in some institutions than in others, but the recent

2

surge in cases nationally have hit federal penal institutions particularly hard. At the U.S. Prison at Victorville, 486 inmates have tested positive for COVID-19.[1] That prison houses 1,167 inmates.[2]

The Centers for Disease Control have produced two lists of conditions that could affect the severity of a person's COVID-19 symptoms and illness. Because our understanding of the coronavirus is incomplete, the CDC has one list of conditions known to increase the risk of severe illness from COVID-19 and another list of conditions that might place a person at increased risk before severe illness.[3]

Mr. Reed contends that several factors make him more likely to suffer severely should he contract COVID-19. Chief among those is his age. Mr. Reed is 61 years old, and the coronavirus has proven itself to be deadlier to older people. Mr. Reed reproduced a graph by the Centers for Disease Control saying that 14.5% of those who have died from COVID-19 have been people between the age of 50 and 65.

Mr. Reed suffers from high blood pressure. The CDC lists high blood pressure as a condition that might put a person at an increased risk for severe illness from the COVID-19 virus. Mr. Reed cites a Journal of the American Medical

---

[1] https://www.bop.gov/coronavirus/index.jsp (last accessed March 23, 2021).

[2] https://www.bop.gov/coronavirus/index.jsp (last accessed March 23, 2021).

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed March 23, 2021).

Association article reporting a study that found that hypertension was the most common comorbidity among a group of 168 people in Wuhan, China, who died from COVID-19.

Mr. Reed also suffers from hepatitis C and has kidney and liver trouble. The CDC lists liver disease as a condition that might put a person at an increased risk for severe illness from COVID-19. Mr. Reed was taken to the hospital a year ago, but the court can't tie that incident to an enhanced risk from COVID-19. Mr. Reed also believes that he is in the beginning stages of Parkinson's Disease.

Mr. Reed's age, hypertension, and hepatitis C mean that he is at a greater risk of a deadly outcome should he contract COVID-19. As with all prisoners, he can't do things the rest of us can do for self-protection, such as effective social distancing and using an alcohol-based hand sanitizer. Mr. Reed has demonstrated extraordinary and compelling reasons for compassionate release.

That doesn't end the inquiry; the court also must consider the sentencing factors in 28 U.S.C. § 3553(a). United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021). The government argues that the factors in the federal sentencing statute counsel against compassionate release. The government points to what the sentencing court referred to as Mr. Reed's "long and serious criminal history." That history counsels a great deal of caution. As already noted, Mr. Reed was convicted of four robberies (two of them armed) in three states. His record also reflects an Illinois conviction for aggravated sexual assault with a weapon. Mr.

4

Reed wrote to the court to explain that his conviction actually was for aggravated assault, and not aggravated sexual assault. Mr. Reed raised that objection at his sentencing, but offered nothing other than his own assertion. That simple assertion wasn't enough to contradict what the presentence report said, and it isn't enough now. But even if Mr. Reed is right, a conviction for armed aggravated assault doesn't improve his criminal history much. Mr. Reed also was convicted in Illinois of aggravated flight from arrest, and was on probation when he committed these federal crimes.

But despite the prior convictions for robberies in an assault, the longest sentence Mr. Reed ever received—this one—was for simple possession, not use, of firearms. Police found two loaded handguns and ammunition in a home he said wasn't his. There is no suggestion that Mr. Reed used, brandished, or fired the guns, whether in furtherance of criminal activity or not. So as dangerous as Mr. Reed was in the years before this crime, his conduct on this occasion wasn't violent.

Mr. Reed has taken many courses in the Bureau of Prisons that are designed to make him a better citizen upon release. If released, he plans to live with his three sisters in South Bend, Indiana.

Turning to the various statutory sentencing factors, Mr. Reed's crime was serious because of his demonstrated past violence, but was itself non-violent. Mr. Reed's criminal history is very serious, though his robbery and assault convictions

5

all took place in or before 1995, a quarter century ago. Mr. Reed earned his G.E.D. during an earlier prison sentence. He is unmarried and childless. As would be expected of one who has been in an out of prisons as much as Mr. Reed has, his employment record is spotty and very dated.

Trying to evaluate with any certainty the risk posed by a man who has been in prison for fourteen years, a man who was 46 years old at the time of his crime and 61 now, is beyond human capability. Neither side has mentioned Mr. Reed's disciplinary record during this sentence, so the court infers that record wouldn't strengthen either Mr. Reed's position or the government's position. Even recognizing that the Sentencing Commission has found that people convicted of firearms offenses "age out" of crime more slowly than other offenders, it seems highly probable that Mr. Reed poses a far lower risk of criminal activity than he did when he was sentenced—but his criminal record demands recognition that the risk is greater than zero.

If released—in other words, if his sentence is modified to "time served"—Mr. Reed still faces a five-year supervised release term, which should help reduce whatever risk Mr. Reed might pose to the public.

Mr. Reed has served about 71 percent of his sentence (which was at the high end of the guideline range), and has served 84 percent of the lowest sentence the guidelines commanded in 2007. His sentence was itself about 25 percent above the bottom of the sentencing guidelines and 45 percent above the statutory

6

minimum. An early release would be inconsistent with the goal of consistent sentencing among similar offenders, but an early release might foster respect for the law, which includes Congress's grant of authority to release offenders for extraordinary and compelling reasons.

Most federal inmates are 31 to 45 years old.[4] At age 61, Mr. Reed is more subject to severe illness from COVID-19, due to his age alone, than most inmates are; his hypertension and his hepatitis C compound his risk of severe illness. The reasons for compassionate release for Mr. Reed are truly compelling. Consideration of the sentencing factors doesn't strengthen his case for release, but doesn't weaken it much, either. The government is right to be concerned about Mr. Reed's criminal history, but nearly every other factor either favors release or is neutral. The government's concern can be addressed, to some extent, by requiring Mr. Reed to serve the first six months of his supervised release term on home detention.

Mr. Reed's criminal history warranted a long sentence in 2007 and Mr. Reed has served a long sentence, albeit not as long as it would have been but for the deadly threat posed by the pandemic. Compassionate release for Terry Reed is appropriate.

The court GRANTS Terry Reed's motion for compassionate release [Doc. No. 102]. The defendant's previously imposed sentence of concurrent terms of 262

---

[4] https://www.bop.gov/about/statistics/statistics_inmate_age.jsp

7

months on Counts 1 and 2 is reduced to time served. His five-year supervised release remains, and the court adds the following condition to the terms of his supervised release:

> The defendant shall serve a 6-month term of home detention to begin within 10 days of placement on supervision, with electronic monitoring (or an equally effective alternative form of surveillance, to ensure compliance with this condition), at his or her own expense through participation in a co-payment program administered by the probation office. During this time, defendant shall remain at his or her place of residence except for times specifically authorized in advance by the probation officer. Failure to pay these fees shall not be grounds for imprisonment unless the failure is willful. This condition is imposed as a substitute for imprisonment. It also reduces the risk of recidivism and provides public protection and defendant rehabilitation.

The remaining conditions of supervised release are unchanged.

This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it's safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

SO ORDERED.

ENTERED:      March 24, 2021

8

                                              <u>/s/ Robert L. Miller, Jr.</u>
                                              Robert L. Miller, Jr., Judge
                                              United States District Court

cc:   T. Reed
       USP Victorville